U.S. DISTRICT COURT – N.D. OF N.Y.
**FILED**

**Jun 05 - 2026**

John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA
ex rel. MATTHEW WELCH AND JAMES SECHRIST,

         Plaintiffs,

v.

AMERICAN FIRST CONTRACTING, INC.;
BROADWAY ELECTRIC, INC.; CORNERSTONE
CONTRACTING; INNOVATIVE SUPPORT
SOLUTIONS, INC.; AFCI-CCI-JV ONE LLC; JOHN
OEHLER; and CHRISTIAN BLAKE,

         Defendants.

Civil Action No.
5:23-CV-0525 (AJB/ML)

**FILED UNDER SEAL**

**UNITED STATES' NOTICE OF ELECTION TO INTERVENE IN PART
FOR SETTLEMENT PURPOSES AND TO DECLINE TO INTERVENE IN PART**

Pursuant to the False Claims Act, 31 U.S.C. §§ 3730(b)(2) and (4), the United States

notifies the Court that it hereby intervenes in this action as to Defendants Broadway Electric, Inc.,

Cornerstone Contracting, Inc., John Oehler, and Christian Blake (the "Settling Defendants") for

the limited purpose of settlement with regard to the Covered Conduct delineated in a settlement

agreement ("Agreement") signed by the United States, the Settling Defendants, and the relators, a

copy of which is attached hereto. The United States declines to intervene with regard to all

remaining claims.

The Agreement requires the Settling Defendants to pay the United States $21,300,000, plus

interest, in yearly installments ending in December 2030, after which the United States and relators

will file a joint stipulation of dismissal. Given the lengthy payment period and the parties' desire

for the Court to retain authority to enforce the Agreement, the government respectfully suggests

that the Court administratively close the case upon the filing of the relators' counsel's dismissal of all remaining claims, as counsel has indicated they intend to do.

The United States requests that the Court unseal all filings in this action **except** for the documents associated with docket entries 6, 8, 10, 12, 14, 17, 18, 19, and 22, which constitute the United States' *ex parte* applications for extensions of the seal period. The applications should remain under seal because, in discussing the content and extent of the United States' investigation, such papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.

A proposed order accompanies this notice.

Dated: June 5, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

JOHN A. SARCONE, III
First Assistant United States Attorney

/s/ Adam J. Katz
ADAM J. KATZ
Assistant United States Attorney
Bar Roll No. 517894

JAMIE ANN YAVELBERG
PATRICK M. KLEIN
JAMES P. NEALON
Attorneys, Commercial Litigation Branch
P.O. Box 261, Ben Franklin Station
Washington, DC 20044

*Attorneys for the United States of America*

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Department of Veterans Affairs ("VA") and the Small Business Administration ("SBA") (collectively the "United States"), Broadway Electric, Inc., Cornerstone Contracting, Inc., John Oehler, and Christian Blake (collectively, "Defendants"), and Matthew Welch and James Sechrist ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

Defendants admit, acknowledge, and accept responsibility for the conduct set forth in Paragraphs A–F and I below:

A.     Broadway Electric, Inc. ("Broadway"), based in Mount Prospect, Illinois, provides estimating, project management, construction, and administrative services. Cornerstone Contracting, Inc. ("Cornerstone"), formerly known as Broadway Construction, is a direct subsidiary of Broadway and is also based in Mount Prospect, Illinois. Cornerstone provides general contracting and construction services. Broadway and Cornerstone are referred to together herein as "Broadway-Cornerstone." Neither Broadway nor Cornerstone qualified as a "small business concern" within the meaning of applicable federal regulations during the relevant period. *See* 13 C.F.R. Part 121.

B.     During the relevant period, John Oehler was Broadway's Chief Executive Officer, and Christian Blake was Broadway's and Cornerstone's President.

C.     Between April 1, 2017 and May 31, 2025, Broadway-Cornerstone worked with multiple purported small businesses to access the set-aside contracts set forth in

Exhibit C, for which Broadway and Cornerstone were not eligible to bid on their own. These contracts include, but are not limited to, several service-disabled veteran-owned small business ("SDVOSB") set-aside contracts. The SDVOSB program is designed to ensure that federal contracting opportunities are awarded to small businesses owned and controlled by service-disabled veterans who qualify under applicable federal requirements. Neither Oehler nor Blake is a service-disabled veteran or a veteran of the United States Armed Forces.

D.      In these arrangements, the SDVOSB or other purported small business served as the prime contractor in name, while Broadway and Cornerstone identified contracting opportunities, prepared and priced bids, secured bonding, selected subcontractors and personnel, and performed the substantial work on the contracts. The purported small business received a fixed percentage of the contract value, typically between approximately one and three percent, while Broadway and Cornerstone received or distributed to second-tier contractors that they selected the remaining contract revenue and controlled contract performance.

E.      Broadway-Cornerstone implemented this model through various formal structures, including teaming agreements, joint ventures, and mentor-protégé relationships. Regardless of form, the economic substance remained the same: Broadway and Cornerstone exercised primary control over contract performance and business operations, while the SDVOSB or other purported small business functioned principally as a pass-through entity to access set-aside contracts reserved for qualifying small businesses owned and controlled by service-disabled veterans or other eligible small businesses under applicable program requirements. Broadway-Cornerstone personnel

2

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

managed project finances, payroll, and administration; selected and compensated the purported small business's personnel; and, in certain instances, used service-disabled veterans' and other small-business owners' email domains and signature authority to communicate with government agencies, creating the appearance that the small business independently controlled and performed the work required under the contracts at issue.

      F.     John Oehler and Christian Blake were directly involved in establishing, maintaining, and directing these arrangements throughout the relevant period. Oehler and Blake identified and selected contracting opportunities, determined whether and how SDVOSBs and other purported small businesses would participate, and oversaw the preparation and submission of bids in the purported small businesses' name. They approved and maintained compensation structures under which SDVOSBs and other purported small businesses received fixed payments, typically between approximately one and three percent of contract value, regardless of the scope of work performed, notwithstanding contractual provisions requiring profit-sharing based on work performed and ownership interests. They directed or permitted Broadway-Cornerstone personnel to perform functions assigned to the SDVOSBs and other purported small businesses, including project management, estimating, subcontractor selection, and financial administration.

      Contemporaneous email and sworn testimony reflect that Oehler and Blake were informed that applicable SBA requirements mandated that SDVOSBs control contract performance and receive benefits commensurate with their work. At least one SDVOSB owner raised specific concerns regarding compliance with federal requirements on multiple occasions, including by advising them of the need to follow the "spirit and letter

3

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

of the law," to ensure appropriate profit-sharing, and to provide meaningful mentoring and participation in bidding and project management. Oehler and Blake acknowledged these concerns but did not implement material changes to the structure or operation of the arrangements they had established and maintained. Instead, Broadway and Cornerstone continued to control bidding decisions, prepare bids for signature, manage personnel and finances, and perform the majority of contract work, while SDVOSBs and other purported small businesses continued to receive fixed compensation.

Oehler and Blake also approved or permitted practices that obscured the roles of Broadway and Cornerstone and the purported small businesses, including the use of SDVOSB or other purported small business email domains by Broadway-Cornerstone personnel, the use of signature authority on behalf of SDVOSBs and other purported small businesses, and the use of financial arrangements that were not disclosed to the government. These practices were inconsistent with the requirements of the SDVOSB and other small business programs and with the representations made in connection with the award of set-aside contracts.

G. On April 28, 2023, Relators filed a qui tam action in the United States District Court for the Northern District of New York captioned *United States ex rel. Welch et al. v. American First Contracting Inc., et al.*, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").

H. The United States contends that Broadway, Cornerstone, Oehler, and Blake engaged in a coordinated scheme, spanning April 1, 2017 through May 31, 2025 and involving the contracts listed in Exhibit C, to obtain subcontract awards on contracts set aside by law for small businesses, including service-disabled veteran-owned small

4

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

businesses, for which Broadway and Cornerstone were not eligible, and that it has certain civil claims against Defendants arising from the conduct described in the paragraphs above during that period. Broadway and Cornerstone, neither of which qualified as a small business concern within the meaning of applicable federal regulations, acting through Oehler and Blake and under their direction, conspired with purported SDVOSBs and other purported small businesses to present those entities as independent prime contractors, while Broadway and Cornerstone exercised primary control over bidding, contract performance, personnel, and financial administration, and performed the substantial portion of the work on the contracts. Through this arrangement, Broadway and Cornerstone caused claims to be submitted and payments to be made on small-business set-aside contracts based on material misrepresentations regarding the purported small business's eligibility, ownership, and control. Oehler and Blake knowingly participated in, directed, and approved the scheme and the conduct giving rise to it, including by identifying and selecting contracting opportunities, overseeing the preparation and submission of bids in the SDVOSBs' and other purported small businesses' names, maintaining compensation structures under which those entities received fixed payments unrelated to their purported share of work performed, and permitting the use of the purported small businesses' representations and identifiers to obtain and perform set-aside contracts. The conduct described in this Paragraph, together with Paragraphs A–F, constitutes the Covered Conduct.

I.      Defendants' conduct resulted in violations of federal regulations designed to ensure that contract awards are made to legitimate service-disabled veteran-owned small businesses and other small businesses unaffiliated with larger entities.

5

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

J.      Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      Defendants agree to pay the United States the sum of $21,300,000, plus interest ("the Overall Settlement Amount") at a rate of 4% per annum from February 26, 2026, and continuing until and including the date of each payment, made in accordance with the Payment Schedule attached as Exhibit A.  Defendants shall pay the Overall Settlement Amount by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice.  Defendants shall be jointly and severally liable for the Overall Settlement Amount, except as provided in Paragraph 1(d) below.  Defendants agree to pay the Overall Settlement Amount as follows:

a.      Broadway-Cornerstone agrees to pay the United States the sum of $17,075,000, plus all interest accrued on the Overall Settlement Amount ("the Broadway-Cornerstone Settlement Amount"), in accordance with the Payment Schedule attached as Exhibit A, which provides for an initial payment of $1,775,000 within thirty (30) days of the Effective Date of the Agreement.  The remaining $15,300,000, plus all applicable interest, shall be paid pursuant to the payment schedule attached as Exhibit A ("the Broadway-Cornerstone Payments Over Time").

6

b. John Oehler agrees to pay the United States the sum of $4,000,000, of which $2,000,000 shall be restitution ("the Oehler Settlement Amount"), in accordance with the Payment Schedule attached as Exhibit A, which provides for an initial payment of $2,500,000 within thirty (30) days of the Effective Date of the Agreement.  The remaining $1,500,000, shall be paid pursuant to the payment schedule attached as Exhibit A ("the Oehler Payment Over Time").

c. Christian Blake agrees to pay the United States the sum of $225,000, of which $112,500 shall be restitution ("the Blake Settlement Amount"), within thirty (30) days of the Effective Date of the Agreement.

d. Conditioned on the United States' receipt of both the Oehler Settlement Amount and the portion of the Broadway-Cornerstone Settlement Amount that is due on or before December 31, 2027, John Oehler shall no longer be jointly and severally liable for the Overall Settlement Amount.  Further, if Broadway-Cornerstone obtain Security, in form, amount, and substance satisfactory to the United States, for the full Overall Settlement Amount remaining at any time, John Oehler and Christian Blake shall no longer be jointly and severally liable for the Overall Settlement Amount.  "Security" means any collateral, guarantee, escrow, letter of credit, surety bond, pledge, insurance policy, or other form of credit support securing payment obligations under this Agreement, whether from Defendants or any third party, in form, amount, and substance satisfactory to the United States.

e. The Broadway-Cornerstone Payments Over Time and the Oehler Payment Over Time shall be secured pursuant to a Consent Judgment, in the form of Exhibit B.

7

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

f.    If Defendants or any of their affiliates is sold, merged, or transferred, or a significant portion of the assets of Defendants or of any of their affiliates is sold, merged, or transferred into another non-affiliated entity, Defendants shall promptly notify the United States, and all remaining payments owed pursuant to the Payments Over Time shall be accelerated and become immediately due and payable.

g.    The Payments Over Time may be prepaid, in whole or in part, without penalty or premium.

2.    Conditioned upon the United States receiving the payments described in Paragraph 1 and set forth in Exhibit A, the United States shall pay to Relators by electronic funds transfer 17.25 percent of each such payment received, or amounts otherwise collected, under the Settlement Agreement ("Relators' Share") as soon as feasible after receipt of each payment.

3.    Defendants shall pay Relators the sum of eighty-seven thousand, eight hundred thirty-two and 73/100 dollars ($87,832.73) as full compensation of any and all amounts that Relators may claim to be due for reasonable attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d)(1) ("Relator Attorneys' Fees Payment"). The Relator Attorneys' Fees Payment shall be made via wire transfer to Morgan & Morgan within thirty (30) days of the Effective Date of this Agreement. Interest shall not accrue on the Relator Attorneys' Fees Payment if made in accordance with this deadline.

4.    Subject to the exceptions in Paragraph 1(d) (concerning the release of Oehler's joint and several liability upon the making of certain payments), Paragraph 6 (concerning reserved claims) below and subject to Paragraph 9 (concerning disclosure of assets), Paragraph 14 (concerning default), and Paragraph 15 (concerning bankruptcy)

8

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

below, and upon the United States' receipt of the Overall Settlement Amount, plus interest due under Paragraph 1, the United States releases the Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 1(d) (concerning the release of Oehler's joint and several liability upon the making of certain payments), Paragraph 6 (concerning reserved claims) below, and subject to Paragraph 9 (concerning disclosure of assets), Paragraph 14 (concerning default), and Paragraph 15 (concerning bankruptcy) below, and upon the United States' receipt of the Overall Settlement Amount, plus interest due under Paragraph 1, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release Defendants from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, including but not limited to any claims for attorneys' fees and/or costs.

6.      Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.      Any criminal liability;

9

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

c.    Except as explicitly stated in this Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

d.    Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.    Any liability based upon obligations created by this Agreement;

f.    Any liability of individuals, other than Oehler and Blake for the conduct set forth in Paragraphs A–F and I above;

g.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.    Any liability for failure to deliver goods or services due; and

i.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.    Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators' receipt of the Relators' Share, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

10

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

8.    Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, releases Defendants, and its officers, agents, and employees, from any liability to Relators arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

9.    Defendants have provided sworn financial disclosures and supporting documents ("Financial Disclosures") to the United States and the United States has relied on the accuracy and completeness of those Financial Disclosures in reaching this Agreement. Defendants warrant that the Financial Disclosures are complete, accurate, and current as of the Effective Date of this Agreement. If the United States learns of asset(s) in which Defendants had an interest of any kind as of the Effective Date of this Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Defendants' obligations under this Agreement) that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Defendants on, or in connection with, the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $1,065,000 or more, the United States may at its option:  (a) rescind this Agreement and reinstate its suit or file suit based on the Covered Conduct or (b) collect the full Overall Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Defendants' previously undisclosed assets. Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and agree that they will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the

11

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States, pursuant to this paragraph rescinds this Agreement, Defendants waive and agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on April 28, 2023.

10.     Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

11.     Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

12.     Defendants fully and finally release the Relators from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the

12

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

Relators, related to the Covered Conduct and the Relators' investigation and prosecution thereof.

13.    a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)    Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement; and

(5)    the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b.    Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

13

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

c.      Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants or any of their subsidiaries or affiliates from the United States.  Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.   The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

14.     The Overall Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due solely to Defendants' financial condition as reflected in the Financial Disclosures referenced in Paragraph 9.

a.      Subject to the provisions of Section 1(d) hereof, in the event that Defendants fail to pay the Overall Settlement Amount as provided in the payment schedule set forth in Paragraph 1 above, Defendants shall be in Default of Defendants' payment obligations ("Default").  The United States will provide a written Notice of Default, and Defendants shall have an opportunity to cure such Default within ten (10) calendar days from the date of receipt of the Notice of Default by making the payment

14

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment.  Notice of Default will be delivered to Matthew Feinberg, PilieroMazza PLLC, 1001 G Street, NW, Suite 1100, Washington, DC 20001, mfeinberg@pilieromazza.com, or to such other representative as Defendants shall designate in advance in writing.  If Defendants fail to cure the Default within ten (10) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Overall Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b.      Subject to the provisions of Section 1(d) hereof, in the event of Uncured Default, Defendants agree to entry of the Consent Judgment in the amount of the unpaid principal and interest balance, and that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 4 above, with any recovery reduced by the amount of any payments previously made by Defendants to the United States under this Agreement; (ii) take any action to execute and collect on the Consent Judgment; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendants and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement,

15

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Defendants agree immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, Defendants waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the United States against Defendants within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on April 28, 2023. Defendants agree not to contest any offset, recoupment, and/or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

15.     In exchange for valuable consideration provided in this Agreement, Defendants and Relators acknowledge the following:

a.     Defendants have reviewed their financial situation and warrant that they are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Overall Settlement Amount.

b.     In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a

16

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c.    The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d.    The Parties do not intend to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e.    If any of Defendants' payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Overall Settlement Amount is paid in full, Defendants or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Defendants' debts, or to adjudicate Defendants as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets:

(i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 4 above;

(ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against Defendants in the amount of $199,202,248.77, less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such

17

payments are not otherwise avoided and recovered from the United States by a receiver, trustee, creditor, custodian, or similar official;

(iii) if any payments are avoided and recovered by a receiver, trustee, creditor, custodian, or similar official, the United States shall not be responsible for the return of any amounts already paid by the United States to the Relator; and

(iv) if, notwithstanding subparagraph (iii), any amounts already paid by the United States to the Relators pursuant to Paragraph 2 are recovered from the United States in an action or proceeding filed by a receiver, trustee, creditor, custodian, or similar official in or in connection with a bankruptcy case that is filed within two years of the Effective Date of this Agreement or of any payment made under Paragraph 1 of this Agreement, Relators shall, within thirty days of written notice from the United States to the undersigned Relators' counsel, return to the United States all amounts recovered from the United States.

f.    Defendants agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 15.e is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Defendants shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consent to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Defendants waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Defendants that the releases have

18

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

been rescinded pursuant to this paragraph, except to the extent such defenses were available on April 28, 2023.

16.    This Agreement is intended to be for the benefit of the Parties only.

17.    Upon receipt of all payments described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1). The Joint Stipulation shall be (i) with prejudice as to the United States' and the Relators' claims as to the Covered Conduct, and (ii) without prejudice as to the United States and with prejudice as to the Relators as to all other allegations set forth in the Civil Action.

18.    Except as provided in Paragraph 3, above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

19.    Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

20.    This Agreement is governed by the laws of the United States.  The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Northern District of New York.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

21.    This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

22.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

23.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.    This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

25.    This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

26.    All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

27.    This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE PAGES FOLLOW]

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

THE UNITED STATES OF AMERICA


DATED: June 5, 2026 _____ BY: _____

Adam J. Katz
Assistant United States Attorney
Northern District of New York


DATED: 6/5/2026 BY: _____

James P. Nealon
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice


21

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

## DEFENDANTS

DATED: 6/3/2026    BY: _____

Christian Blake, President
Broadway Electric, Inc.

DATED: 6/3/2026    BY: _____

Christian Blake, President
Cornerstone Contracting, Inc.

DATED: 6/3/2026    BY: _____

John Oehler

DATED: 6/3/2026    BY: _____

Christian Blake

DATED: 6/3/2026    BY: _____

John D. Mitchell
Counsel for John Oehler and Christian Blake

DATED: 6/3/2026    BY: _____

Matthew Feinberg
Counsel for Broadway Electric Inc. and Cornerstone
Contracting Inc.

22

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

RELATORS

DATED: 6/4/2026 | 2:18 PM EDT   BY: *Matthew Welch*
Matthew Welch

DATED: 6/3/2026 | 11:24 AM EDT   BY: *James Sechrist*
James Sechrist

DATED: 6/3/2026 | 10:57 AM EDT   BY: *Clark Bolton*

Clark Bolton
Counsel for Relators

23

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

# EXHIBIT A

24

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

| Payor | Period | Date | Payment | 4.00% Interest | Principal | Balance | Days |
|---|---|---|---|---|---|---|---|
| | | 2/26/2026 | | | | 21,300,000.00 | |
| Broadway-Cornerstone | Up Front* | 7/5/2026 | 2,076,117.81 | 301,117.81 | 1,775,000.00 | 19,525,000.00 | 129 |
| John Oehler | Up Front* | 7/5/2026 | 2,500,000.00 | - | 2,500,000.00 | 17,025,000.00 | |
| Christian Blake | Up Front* | 7/5/2026 | 225,000.00 | - | 225,000.00 | 16,800,000.00 | |
| Broadway-Cornerstone | Year 1 - 2026 | 12/31/2026 | 2,329,556.16 | 329,556.16 | 2,000,000.00 | 14,800,000.00 | 179 |
| Broadway-Cornerstone | Year 2 - 2027 | 12/31/2027 | 4,592,000.00 | 592,000.00 | 4,000,000.00 | 10,800,000.00 | 365 |
| John Oehler | Year 2 - 2027 | 12/31/2027 | 1,500,000.00 | | 1,500,000.00 | 9,300,000.00 | 365 |
| Broadway-Cornerstone | Year 3 - 2028 | 12/31/2028 | 3,672,000.00 | 372,000.00 | 3,300,000.00 | 6,000,000.00 | 366 |
| Broadway-Cornerstone | Year 4 - 2029 | 12/31/2029 | 3,240,000.00 | 240,000.00 | 3,000,000.00 | 3,000,000.00 | 365 |
| Broadway-Cornerstone | Year 5 - 2030 | 12/31/2030 | 3,120,000.00 | 120,000.00 | 3,000,000.00 | - | 365 |
| | | TOTAL: | 23,254,673.97 | 1,954,673.97 | 21,300,000.00 | | |

*The Up Front Payments will be due 30 days from the Effective Date of the Agreement, and the amount of interest due will depend on the date of payment.

25

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

# EXHIBIT B

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA *ex rel.*
MATTHEW WELCH and JAMES
SECHRIST,

                Plaintiffs,

      v.

BROADWAY ELECTRIC, INC.;
CORNERSTONE CONTRACTING, INC.;
JOHN OEHLER; and CHRISTIAN
BLAKE,

                Defendants.

Case No.  5:23-cv-0525 (TJM/ML)

## CONSENT JUDGMENT

This matter is before the Court upon the consent of the United States of America, Relators, and all Defendants, through counsel.

Defendants consent to entry of this judgment against them in Case No. 5:23-cv-0525 (the "Civil Action"). As established by the attached Settlement Agreement, the Court finds as follows:

1. This Court has jurisdiction over the Parties and over the subject matter of the Civil Action.

2. The Parties negotiated an agreement to resolve certain claims that Relators filed on behalf of the United States in the Civil Action (the "Settlement Agreement").

3. The Settlement Agreement requires Defendants to pay the United States $21,300,000, plus interest as provided in Paragraph 1 of the Settlement Agreement, pursuant to the terms set forth in the Settlement Agreement and its exhibits.

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

4. Defendants are in Default as defined in Paragraph 14 of the Settlement Agreement. The United States provided written Notice of Default to Defendants, and Defendants failed to cure the Default within the ten (10) calendar day cure period required by Paragraph 14(a).

5. Pursuant to Paragraph 14(b) of the Settlement Agreement, upon an uncured Default, the Parties agreed that judgment would be entered in favor of the United States against Defendants in the amount set forth below.

6. The conditions for entry of this Consent Judgment have been satisfied.

7. Upon Default as defined in Paragraph 14 of the Settlement Agreement and expiration of the applicable cure period without cure, the entire remaining unpaid balance of the Settlement Amount, including all accrued interest, is hereby accelerated and immediately due and payable.

**WHEREFORE, IT IS HEREBY ORDERED** that judgment is entered in favor of the United States and against Defendants in the amount of $21,300,000, plus interest accrued thereon, less all payments previously made by Defendants to the United States pursuant to Paragraph 1 of the Settlement Agreement, which shall be credited against the total judgment amount. Interest shall accrue as follows: (a) at a rate of 4% per annum from February 26, 2026 through and including the day immediately preceding the date of Default, applied to the unpaid balance of the Settlement Amount; and (b) at a rate of 12% per annum, compounded daily, from the date of Default through and including the date of

28

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

full satisfaction of the judgment, applied to the entire remaining unpaid balance, including all accrued but unpaid interest.

This Consent Judgment is entered pursuant to and consistent with Exhibit B of the Settlement Agreement, which governs enforcement of payment obligations upon Default and is incorporated herein by reference.

**IT IS SO ORDERED.**

Dated:_____      _____

                                    United States District Judge

29

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

# EXHIBIT C

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

| CONTRACT NUMBER | NAICS CODE |
|---|---|
| VA250-17-C-0087 | 238210 |
| VA701-17-C-0016 | 237130 |
| VA248-17-C-0125 | 238990 |
| VA249-17-B-0720 | 238210 |
| VA242-17-C-0140 | 236220 |
| VA250-17-C-0203 | 238210 |
| 36C24418C0031 | 238220 |
| 36C25519C0080 | 238220 |
| 36C24418C0101 | 238210 |
| 36C24718C0150 | 238210 |
| 15850818CT4G50001 | 236210 |
| W912PM18C0021 | 236220 |
| 36E77618C0029 | 238210 |
| W912P818C0055 | 237990 |
| W9128A-18-C-0005 | 236220 |
| 36C24718C0135 | 236220 |
| W912PM19C0005 | 236220 |
| 36C25519C0067 | 238210 |
| W91SMC-19-C-6001 | 236220 |
| 36C25219C0104 | 236220 |
| 36C25219C0159 | 238210 |
| 36C25219C0158 | 236220 |
| 36C24719R0039 | 236220 |
| 36C24419C0170 | 238160 |
| 36C25919C0282 | 236220 |
| 15B40119CU6T30001 | 238290 |
| W50S8Z20C0001 | 236210 |
| W912EK20C0031 | 236220 |
| 15B40120CV1E30001 | 236220 |
| 36C24220C0127 | 238220 |
| FA700020C0015 | 238220 |
| 36C25520C0058 | 238220 |
| 15B51520CV1S50001 | 238210 |
| PDN #EN-47PC0420P0052 | 236220 |
| 36C25020C0174 | 238220 |
| W912QR20C0034 | 236220 |

31

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

| | |
|---|---|
| 36C25020C0225 | 238210 |
| 36C256-20-C-0164 | 236220 |
| 36C786-20-C-0345 | 237990 |
| 36E77620C0077 | 236220 |
| W9126G20C0058 | 236220 |
| W912P620C0021 | 237110 |
| W912P6-20-C-0030 | 236220 |
| FA252120B0003 | 236220 |
| 36C77621C0001 | 238210 |
| 15BBR021CW3Z10001 | 238210 |
| 36C252-21-C-0012 | 238220 |
| 36C25021C0068 | 238220 |
| 36C10X21P0029 | 541330 |
| 36C25521C0030 | 238210 |
| 36C24221C0097 | 237110 |
| 36C24221C0106 | 236220 |
| 36C24921C0068 | 236220 |
| 36C24921C0072 | 238210 |
| 36C24921C0088 | 238210 |
| 15B40621CW4N40001 | 238160 |
| 336C24221C0074 | 236220 |
| 36C24221C0117 | 236220 |
| 36C24921R0086 | 238220 |
| 15B30121CW3W30001 | 238210 |
| 36C77621C0097 | 236220 |
| 36C25221C0057 | 236220 |
| 36C24221C0144 | 236220 |
| 36C24221C0143 | 236220 |
| 47PH0521C0001 | 238210 |
| 36C78621C0090 | 237990 |
| 140R1022C0002 | 236220 |
| 36C24922C0051 | 236220 |
| 36C24622C0020 | 561621 |
| 36C77622C0052 | 236220 |
| 36C24222C0098 | 236220 |
| 36C25022C0167 | 236220 |
| 36C77622C0094 | 236220 |
| 36C77622C0086 | 236220 |

32

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)

| | |
|---|---|
| 36C77622C0112 | 236220 |
| 36C77622C0141 | 236220 |
| 36C4622C0092 | 236220 |
| 36C24923C0051 | 238220 |
| 36C24223C0075 | 236220 |
| 36C77623C0043 | 236220 |
| 36C77623C0048 | 236220 |
| 36C77623C0087 | 236220 |
| 15BFA023C00000015 | 238160 |
| 36C77623C0094 | 236220 |
| 36C26223C0277 | 236220 |
| 36C77624C0002 | 236220 |
| 15BFA024C00000010 | 238160 |
| 36C77624C0055 | 236220 |
| 36C77624C0150 | 236220 |
| 36C24224C0114 | 236220 |
| 36C77624C0158 | 236220 |
| 36C26224C0167 | 236220 |
| 36C77624C0198 | 236220 |
| 36C24224C0150 | 238220 |
| 36C77621C0024 | 236220 |
| 36C24420C0081 | 236220 |

*United States ex rel. Welch et al. v. American First Contracting, Inc., et al.*, No. 5:23-cv-0525 (N.D.N.Y.)